We will hear argument this morning in Case 24-1021, Galette v. NJ Transit Corp., and the consolidated case. Mr. Zuckerman. Mr. Chief Justice, and may it please the Court, decades ago, New Jersey exercised its autonomy to provide what it saw as an essential public good, a statewide public transportation system. This case asks whether that system is most like a private business, locality, or state agency. NJ Transit's features answer that question decisively. The state gave NJ Transit rulemaking authority, subject to our APA. The state gave it law enforcement power for all criminal laws anywhere in New Jersey. The state authorized it to exercise eminent domain anywhere in New Jersey. The state gave the governor a veto over any proposed board action. And the governor appoints all board members, most with advice and consent, and has for-cause or at-will removal power over each. On top of that, New Jersey owns NJ Transit. NJ Transit has no property rights against the state. And the state sharply limited NJ Transit's ability to raise revenue, cut costs, or issue debt, effectively promising to cover its annual deficits, as it always has. To be sure, as this court wrote of the University of Arkansas some 70 years ago, our legislature called NJ Transit a body corporate and politic. But just as that can't change the answer under precedent, my friends have identified no basis to abandon precedent. Instead, their lead alternative misconstrues original meaning and would convert this court's inquiry into a game no state knew it was playing. That would render countless agencies, including core cabinet agencies, suable without consent overnight, even though this court has never suggested that states experiment with efficiency at peril to their sovereignty. And my friends never even cite the stare decisis factors overlooking the disruption their overhaul would yield. In short, NJ Transit looks nothing like a city or town, and little like a private company. It looks a lot like a New Jersey state agency. That means plaintiffs must sue it where the state has consented, in New Jersey. I welcome this court's questions. What's your best case that this corporation should have the benefit of sovereignty? Justice Thomas, I think this court's decision in State Highway Commission of Wyoming v. Utah Construction Company in 1929 is a really, really good case for us. In that case, there was a private company in Utah that had a dispute with a Wyoming entity that had the right to sue and be sued, had incidents of the corporate form. And the court, in considering the question whether this entity was, in fact, part of the state and therefore couldn't be sued unless the state could be sued, said it. We don't have to even look at the fact that it can sue and be sued. That's not part of our analysis. It is obviously part of Wyoming. And so this court was doing, I think, the kind of substance-based analysis we see from the founding forward, where you look at the entity and you really say, which bucket does it fall into? Does it fall into the bucket of a state agency? Does it fall into the bucket of a town or a municipality? Do you have anything more recent than that? Well, Your Honor, I think there are a lot of cases more recent that would be hard to square with their understanding. So, for example, I haven't heard anything from my friends that helps me understand how they would distinguish the federal agencies. So the court's opinion is that it's he versus Meyer. No, I mean, but that's a state agency, isn't it? I'm sorry, what I'm asking you is, the state creates a corporation, and historically, they've created corporations in order to do things that the states either can't do or won't do, to borrow money, to run banks, to run businesses, et cetera. And the question then becomes whether or not when you do that, when you separate an organization from the normal activity of a state, does it still enjoy the sovereignty of the state? So do you have anything that's recent that would suggest that we have said, you put summary lines on stare decisis. So if you do put reliance on stare decisis, we have to have a case to which that applies. So do you have any that are on all fours or close to on all fours with your case? Your Honor, I think we have a number of cases that would be, if not effectively overruled, then at least the rationale of the decision would be overruled. And that's not just the Mount Healthy line of cases. So Mount Healthy, Hess, Regents. Hess was a, that's a recent case. But in that, I think Justice Ginsburg made the point that, look, she started by saying, look, this is a compact case. Those are quite different from sovereignty because they don't bring all the trappings of sovereignty. So I agree with Your Honor. It certainly was, that was a bi-state entity case. But this court in the Mount Healthy line of cases has always been clear that it's looking at all of these entities through a common substance-based analysis, where the question is not, the question is, I think, actually what Your Honor is getting at, which is, is this thing in substance actually separate from its creator? Of course, it can be denominated a corporation. But that denomination isn't what ends the conversation. It can be evidence. It can be relevant. Sometimes, you're right, Your Honor, states do create entities that they wish to be separate. And we agree those entities are separate, wouldn't be able to benefit from their creator's  The point is that when you look at NJ Transit, when you see what it has, how closely tied it is to New Jersey, and you analyze its features, under state law, the words corporation couldn't have meant that kind of separation because we're giving it rulemaking power. We're having it sued in our appellate division the same way you sue every other agency that engages in rulemaking. We have a statewide police department, all of these hallmarks of sovereignty. We have the governor able to veto every single thing it wants to do. Well, that's true also- I was just going to say, but you disclaim liability for the debts and other exposure of the transit authority, right? So it's kind of hard to say it's part of the state if you're not going to cover it when they get into trouble. Well, Your Honor, I think that's where I go to Hess and this court's guidance, that we look at this both legally and practically. So it's true that in 1979, the legislature wrote this statute that says it creates this kind of escape hatch. We've never used that escape hatch. We fund NJ Transit's deficits every single year, most years well over $200 million, a recent year over a billion dollars. So New Jersey puts its money where its mouth is on this. And so I would look at Judge Bork's opinion in the WMATA case, joined by then Judge Scalia and Judge Scalia Wright, where he says, yes, technically, Maryland and Virginia, their agreement to fund WMATA is voluntary in a truly literalistic sense. But you can't really call it voluntary in any meaningful sense, because of course, they want this thing to survive. It can't survive without their money. They give it money constantly to keep it afloat. And so it's very different from an entity like the Port Authority in Hess, which hadn't needed any support for 60 years when that case came before this court. New Jersey says it's going to indemnify all of its officers who are sued. And so it really is on the hook for any judgments that are entered against those officers. We wouldn't say that the fact that New Jersey has made that commitment or has that monetary skin in the game means that those people are arms of the state. We all agree they're not. Justice Barrett, I agree. I think that's the upshot of Lewis v. Clark. The state can't make something an arm of the state by promising to cover its debts. But I think that's why this sort of treasury factor and a particularly formalistic way of looking at it really has to break down in the sovereign immunity context. Because what you're trying to figure out is whether this thing, what bucket does it fall into? Is it a state agency? Is it like a town where the state can fund it but doesn't have to and doesn't control it? Is it like a private business where the state is really not involved in it, shouldn't be involved in its decision making at all? And when you look at the thing from, you know, you look at all the characteristics that this court has always looked to, not just in the Mount Healthy cases, but going back to the founding, you look at whether the state actually controls it. So its decisions, the state is accountable for its decisions. You look at whether the state is effectively there to backstop it, you see that it looks a lot like any other state agency as New Jersey Transit does, which is why there is no thing that we get, to Justice Thomas' question as well, from it having this formal denomination of a court health agency. But it is something very important. We said in both Mount Healthy and Hess that the corporate form itself is evidence that an entity is not the state, correct? So that factor goes against you. We said in Hess, Regents, and Lewis that formal liability, not informal liability, not indemnity, but formal liability continues to remain centrally important. We've said that, haven't we? So it is absolutely true that it's evidence. We're not disputing that you can take it into account. We called it the critical factor. I think Hess had suggested in 1994 that- In Lewis, he said the same thing. Well, this court has looked to it as a very important factor, but you also said in FMC versus South Carolina State Courts Authority that dignity is the most important factor. The one thing we have said is that control is a perilous inquiry. And that's all you rely on. Because the question of whether you fund the entity or not, what percentage of funding is important? Meaning, would- if you fund up to only 50 percent? We don't know because this is informal. At what juncture and where would we look to say that the state is going to informally fund 100 percent? Your Honor, I don't think it's a numbers game. And so I think what's important is you look at the structure of this entity, how it was set up. But the structure doesn't have a formal commitment. It has what I think Judge Bork rightly called basically a de facto formal commitment, which is this thing can't survive without us funding it as we do year in and year out. And again, we need to tie it in. What you seem to be doing is discounting or ignoring the fact that the state has chosen to set this up as a corporation. And that has to mean something. I mean, your argument sounds like you're saying, don't worry about the fact that the state has chosen the corporate form for this entity. Just look at what it does and to the extent that you see what it does is kind of like an agency that should be enough. And I guess it seemed to me, at least from what I've read and looked at, that the idea of the corporate form has to be given some meaning and that traditionally the idea was that when a state chooses to set it up as a corporation, it is actually instilling a shield, a corporate shield between itself and the corporation's actions and liabilities. So New Jersey could have set this up as an agency and perhaps would have preserved the kind of arguments you're talking about, but instead it chose corporation. And having done so, at least traditionally, I think the analysis was that it also gave up then the ability to instill this entity with something like sovereign immunity. So how do you, I mean, you're sort of suggesting that this multi-factor look at the function of the entity is like how this was always done and that's the way it should be done. And I guess I'm questioning. I thought originally the idea was, is this a corporation? And if it is, it's sort of presumptively not going to get sovereign immunity. Justice Jackson, let me respond on a few, say a few things about that. First, I just want to note at the outset, of course, corporations are, they're creatures of state creation. So there's no agreement at the founding that states- Does that hurt you or help you? My argument is that that hurts you. I think it helps us because it's, because New Jersey has the ability under its own law, it has the autonomy under its own law to have two different types of corporations and to take it back to the founding, to Justice Iredell's dissent in Chisholm at page 447 to 48. He actually says, when we say corporations, we mostly are talking about something that's  We're mostly talking about subordinate corporations. Right, but I'm talking about the reason. Why did the state choose the corporate form? It was doing something. The Chief Justice alludes to this, right? That it was trying to distance itself from having liability for what this entity is doing. And I appreciate that that corporation might be doing municipal-like functions, government-like functions, but the state wanted to have this distance. And so having done that, it seems a little much to say they then can imbue it with the kind of immunity that would prevent the entity from being sued. I think, Justice Jackson, the issue here for us is that we don't see where the real distance is. I think here, the use of the corporate form is a way to achieve some shorthand kind of efficiency that we could have done other ways. So I'll give you an example. We do exempt New Jersey Transit from a number of our civil service requirements. That's our civil service requirements. The legislature had anticipated this argument in this case surely would have just written NJ Transit is the division of NJ Transit and is hereby not subject to the same civil service requirements that some of our other departments are subject to. So too with the notice of claim rules, you know, the indemnification procedures. It treated it as a different kind of, you know, agency in some ways. It was, I think, hoping and trying to help it be more efficient, deliver, you know, service for the citizens of New Jersey in a cost-effective way. Why not accept? What's the difference? If you're saying to me that the state informally is going to pay their debts, why didn't it do it formally? The corporate form is buying it a protection of some sort. I mean, I don't understand why you couldn't have everything you had, done everything you did, and then just meet the historical test, except formally that you would pay its liabilities. So Justice Sotomayor, as a matter of historical fact, why they wrote those words in 1979, which we've never used or relied on. We've always funded this entity. You know, it's a little bit speculative. I think what was going on there. So if we rule against you, you do it now. But the principle that's important to us is being sued where we've consented to be sued. And I think the upshot of my friend's position on the other side is that if New York or a private citizen in New York or New York wanted to sue NJ Transit to bar it from entering New York unless it upgraded its entire fleet to electric buses or something like that, that would somehow not offend New Jersey's dignity. It could launch that suit, not in original jurisdiction, it could launch it in New York trial court. And that would be totally fine for the New York trial court to assert jurisdiction over New Jersey Transit. That's not what these plaintiffs are looking for. They're looking for recompense for injuries that occurred to them as New York citizens in New York or as Pennsylvania citizens in Pennsylvania. Correct? That's absolutely true. And that's why our courts are open to them for that recompense. Our point is simply that they don't live in New Jersey, but they live in the states they've sued and they were injured in the states they sued. Counsel, I'd like to ask you a question about precedent. You said that we would need to overrule precedent to decide this case in favor of the plaintiffs. I'm wondering why that is, because we haven't had any cases, and correct me if I'm wrong, in which we have found the corporate form in which we have said that an entity with a sue and be sued clause that is in the corporate form is immune from suit. Correct? Well, in the Wyoming State Highway Commission case, you did say that it's Wyoming despite it having the corporate form, despite it being a sue and be sued entity. But there's a real party and interest. I mean, we have said, and I think we've made pretty clear that because it's about substance and not formalities, if it really is going to be going like in an Edelman versus Jordan way, if it's really going after the state treasury, if the state is really the real party and interest, that's different. But I guess I just don't see any precedent that would have to be overruled if we decide the case in the plaintiff's favor. So, Justice Barrett, to answer your question directly, I think there's a lot of precedent like the TVA versus Thacker case, FDIC versus Meyer, at least as to Bivens. Those would all be gone because on their theory, those things are not federal agencies at all. They're separate because they're corporations with separate bank accounts. But if I could actually respond to the real party and interest exception directly, I think this is really, really important. My friends on the other side have what they say is a solution to this problem for monetary damages, where they say, okay, well, if you sue NJ Transit, you know, if you sue entities that are denominated as corporations, like the Louisiana Department of Public Safety and Corrections, for example, that's formally a corporation under Louisiana law, if you sue it for damages, well, you can still, you know, the real party and interest exception will kick in. And that's probably right in the sense that those cases are about judgments, and that's why, even though Commissioner Edelman in Edelman versus Jordan was not an arm of Illinois, and yet you could sue him, get prospective relief under Ex parte Young, and be barred from getting financial relief retroactively from the Illinois Treasury. But that doesn't convert Commissioner Edelman into an arm of Illinois. The whole reason it worked is that he wasn't an arm of Illinois. So this breaks down entirely for injunctions and any kind of non-monetary relief, as this talked about in Federal Maritime Commission in 2002, another case that I think, at least that holding, is overruled as to the South Carolina Ports Authority, if you go with their theory, because under their theory, the Louisiana Department of Public Safety and Corrections is not Louisiana. It's a different thing. Maybe you can't get money from it from the state coffers, but you can still hail it into court, including in federal court, for a state law injunction, if you wanted to, because it is not the state. It's a separate thing. That's a huge, huge flaw in their argument, and it's the same reason the dignitary interests are palpable if a private citizen or the state of New York tried to sue NJ Transit in New York trial court to bar it from entering the island of Manhattan. I don't think anyone would look at that and say, wow, that's a matter for the New York trial court. I think you'd say that should be an original jurisdiction case, because that seems like a fight between New York and New Jersey. The other cases that are then also going to get overruled, if you go with their theory, are the original jurisdiction cases, like this 1921 case, New York versus New Jersey, where there's the Passaic Valley Sewerage District. And it has a separate bank account, and it has the corporate form, and this court says, yeah, but the fight that you're having with its alleged nuisances and affluence are really a fight with New Jersey, and so it's right to use original jurisdiction to hail it into court before federal court. It's not like you have some fight with some distinct separate entity. So too for Missouri versus Illinois, where Missouri sues the Chicago Sanitary District, which is a corporation. And yet, it's a proper exercise of original jurisdiction, because you're looking at the substance of this thing. You're seeing that it's controlled by the state. It's doing a state function. It doesn't look like a municipality. It doesn't look like a private company. And therefore, it's a proper use of original jurisdiction to have that fight between Missouri and really Illinois, which is the same thing we're saying here. When you have a fight with NJ Transit, in substance, you're having a fight with New Jersey, which means you have that fight where New Jersey has consented. And in this case, our courts are open for these claims. If the state doesn't get any benefit from slapping on the corporate label, why is it important that, going forward, New Jersey Transit retain the corporate label? Why doesn't it just get rid of that label and call it something else? Call it a special transit entity or whatever name you want to choose? So, Justice Alito, I think two points in response to that question. I think, realistically, if we had anticipated this case, we probably would have done that long ago. And that just speaks to the disruption across the country, because there are lots and lots of entities like this. I mean, I don't know the Florida Department of Transportation, the Louisiana Department of Justice. Nobody really looks at these entities and says, oh, that's what Louisiana and Florida were trying to do, make them separate. You're still going to end up doing a substance-based analysis. Because, of course, if this court says this purported bright-line rule—and I want to get back to why I don't think it's actually that bright line of a rule—but if you say this, of course, states will get wise to it. They'll all delete the words corporate. And then you'll just be back having to do man healthy again on all of these entities anyway. The term corporate was used much more broadly at the founding than it generally is today. And it is somewhat surprising to see what one would think of as a department of the state government labeled a corporation and have some consequences attached to that. So if we put that aside, what in substance are we getting at? Can you express as succinctly as you can the reason why an entity other than the state itself should or should not have sovereign immunity? Absolutely. I'll do my best, Justice Alito. I think any time you're in this area of cases, you know you have three buckets. Leave aside the bi-states. Open up a separate can of worms. You know you have state agencies. You know you have local subdivisions which don't get sovereign immunity. And you have private businesses and entities that don't. And you look at this thing. You see how tightly it's tied to its creator. Because the one thing the states agreed at the founding was that they were going to guarantee a Republican form of government, which means they have to tie these things to the state electorate if they are going to really plausibly say they're part of them, part of the state. And states can only do their work through other people. So they need to create these aggregate groups, whether they call it the Department of Transportation, the Department of Corrections, the Division of New Jersey Transit, or New Jersey Transit Corporation that's inside the executive branch and has all of its members appointed with advice and consent and a gubernatorial veto over everything it does and can't raise revenue or cut costs however it wants to, can do rulemaking, gets treated and challenged for its rulemaking the same way any other agency does, you know, can do eminent domain and law enforcement anywhere in the state. It just looks identical to if we had called the Division of NJ Transit. And so it is a bit of an anachronism that we use the word corporation. And our point is not that you can't count that as evidence. You can't look at it. But when you look at all the other evidence on the other side of the scale, it's just not that probative here. And so this, I think, can be a fairly simple case under your rubric where this one falls pretty easily into the state agency bucket. And, you know, that is, I think, you know, when you look at the New York Court of Appeals opinion, I mean, the one thing they said that I think, you know, I haven't heard anybody try to really defend is that control doesn't cut either way. We have a gubernatorial veto over anything this entity wants to do, which means when New Jerseyans are mad at NJ Transit, who do they get mad at? They get mad at the governor. They don't get mad at, you know, someone inside NJ Transit. It's highly unhelpful. It's sort of, sorry. No, go ahead, please. Don't we have to look at the statute, though? I mean, not only does the statute say that New Jersey Transit is a body corporate, calls it a corporation, and it says it, quote, shall be independent of the supervision or control by the Department of Transportation. So we have this degree of independence that I think would not exist in an agency that you're trying to compare it to. It also says New Jersey Transit can enter into contracts apparently on the other side of the table from New Jersey. It operates independently of the state in that sense. It says that New Jersey Transit has the power to sue and be sued, and I think it's hard to imagine a state agency that would have that power independent of the state. So I guess I'm still struggling with your, even your functional comparison. Justice Jackson, let me try to persuade you and take each of those in turn. On the independence from the Department of Transportation, there's a quirk of state law that in 1947 when they, we readied our constitution, they capped the number of departments at 20, and so whenever the legislature wants to create a new department, it's got to put it in one of the existing 20. And so there are lots of state agencies like the Board of Public Utilities, the Motor Vehicle Commission, our state office of the public defender that live nominally inside other departments but are independent of those departments. What matters is that they're not independent of our governor, and here you have a direct line to the governor who can veto anything they want to do, appoints their members, has, you know, removal powers, some at will, some for cause over all of them. So then, you mentioned the contracts across the table. I mean, it's actually quite common for states, as we've looked around the country, to have departments that are doing work for the state that require them to make contracts with other  Does the state assume the liabilities of New Jersey Transit? Does the state assume the liabilities? Functionally, yes, we do have this. Not functionally, formally. Well, there's a statute that says we're technically not on the hook, but we could have accomplished that any other way. I think we all, everyone in this case actually agrees that states are- Are the assets the assets of New Jersey Transit or of the state? Yes, the state, I mean, NJ Transit holds no superior title to anything independent of the state. If NJ Transit, it does, it's not like if we took their money, they would have a takings plan against us. They never have profits. If they ever did, we could take their profits and use them to fund other things. But they don't ever have profits. Instead, it's always us giving taxpayer money to NJ Transit to help keep it going. State agencies do exercise- Mr. Zuckerman, I have just a real question, and it's a small one, so it shouldn't carry you long. The 11th Amendment, of course, prohibits an individual from suing another state. You didn't make the 11th Amendment argument that it deprives federal courts and jurisdiction over this case. Instead, you asserted sovereign immunity, assuming jurisdiction existed. I'm just curious why. Your Honor, I think, let me take that in a few parts, but I think basically to get to the- No, you get one part. Yeah, I'll try to do one part then. We don't take the 11th, so we're very sympathetic to the idea that there are situations where the text of the 11th Amendment may- I mean, it looks bang on point, right? So there are situations where this is important. I think this is a situation where you have a suit commenced in state court where there's a defense about interstate sovereign immunity, the same posture that arose in- We're in federal court here, I think. We are now, but the suit was begun in state court, and that's what I think is so important, because the word in the amendment is commenced, and they're thinking about where you start, which is the Chisholm fact pattern. You start in federal court. Okay, I understand your point. Thank you. Thank you, counsel. Justice Thomas, any further? Justice Alito? Do you think the 11th Amendment analysis is the same as the sovereign immunity analysis? We haven't disputed that the two- I think it would be odd- it would be a little unwieldy to tell the courts they have to do a different arm of the state analysis in the two. I think if ever it's going to be stronger, it's stronger in the interstate context, because there you have two co-equal sovereigns, one saying it can assert jurisdiction over another, so you have the same things that this court noted in HIA-3, like riparian rights disputes or border disputes. One state adjudicating those against the other is a real problem, whereas at least in the federal context, you have a super-sovereign, neutral third party, but I think it would be confusing for the lower courts to tell them they have to do two different analyses, so we haven't argued for you to have two different tests. Justice Sotomayor? No, thank you. Justice Kagan? I've been a bit surprised you haven't mentioned Biden v. Nebraska. Do you not think it helps you? We think it helps us a lot. We think there are just – as we go through this court's line of cases, we think it is one of the good ones, but it is not the only good one, and so I've gone to other ones where you're doing either sovereign immunity or something that sort of sounds in sovereign immunity, like jurisdiction. But again, I think this court said things in – I mean, I guess what I would have thought, you're of course right that it's not an had to deal with standing. The key question was whether Mahala was a part of Missouri, and I would think it's pretty clearly on point there, right? It's a sue-and-be-sued agency, which had exactly the same kind of insulation from liability as this does, and what the court looked to was intangible aspects of control and directive, you know, who appointed, the board of directors, what kinds of functions, were they serving, all the kinds of things that you want us to look at was what the court said. That was, of course, a dissent, but what the court said was critical in understanding Mahala as a part of the state. I think you're absolutely right, Justice Kagan. I think Biden v. Nebraska is very good for us. If I could touch on one other that I think is recent and very good for us, it's the is denominated a corporation, has a separate bank account, and yet for non-delegation purposes, again, we're not even talking standing or state action, we're talking being able to give it governmental regulatory authority. This court looked at those exact same features and said, yeah, it's still part of the government for these purposes. You'd be walking into an enormous Carter-Cole problem if that hadn't been true. So I think that same substantive analysis, which we think goes back to the founding, I think that's what you see from Chief Justice Marshall's opinion in Dartmouth College, has continued on through this court's cases. And so I think that the U.S. reports are rife with examples of you doing this kind of substantive analysis, including just a couple terms ago in Biden v. Nebraska. Justice Gorsuch? Justice Kavanaugh? This issue, precise issue for this kind of case wouldn't have come up, I guess, in the Nevada v. Hall era, right? So from 79 to 2019 until this court overruled Nevada v. Hall, right? And that's why this case, one of these cases, arose in 2017, and this issue wasn't raised until after Franchise Tax Board, correct? That's exactly right, Justice Kavanaugh. Okay. And then what, to pick up on Justice Jackson's questions, how significant should it be, do you think, in the analysis that the state is not directly liable for the judgments of the transit authority? I think it can't be that important in the analysis because, I guess, two reasons. Let me give you a practical reason. Not just in this case, but in any case.  Yeah. Yeah, I think— You used the word functionally, and I think Justice Jackson picked up on that. And I think that's an important point here, so I've had it. So I don't mean to suggest that it's just totally irrelevant and you can't look at it. What I do mean to suggest is that I think Hess is really clear. You look at this practically and not just formalistically. And I think Judge Bork was really clear and wrote a great opinion in the D.C. Circuit on this exact point. And so, when the structure of it is such that it can't ever turn a profit, it's not designed to make money. No one thinks it can make money. It's providing a public good for people who can't afford to take Ubers everywhere. It's doing something that the state thinks, in its own sovereign autonomy, is really valuable to provide. And the state always puts its money where its mouth is and set it up such that it couldn't survive unless the state continually funded it. That is telling you much more about a commitment than the words on the page, especially when those words on the page could have been written a different way. We could have just said, we hereby reserve our rights that everyone acknowledges that we won't enforce any judgments against us that we are constitutionally permitted to not enforce. Everyone agrees states have that kind of backstop, right? None of them ever use it. The citizens would hate it, but it's there. So it's really odd to ding it for having this kind of reservation clause, which everyone agrees states retain. In fact, they retained it at the founding specifically because they wanted to be able to protect their treasuries. It's really odd to convert that into kind of a, you know, a point against the state that it actually just said it bluntly instead of saying it in a more indirect way that everyone agrees we could have said. Thank you. Justice Barrett? Justice Jackson? I guess I don't understand why HES comes out the way it does. I thought in HES we held that there was no state sovereign immunity and the kinds of things you're talking about in terms of the relationship between the state and the entity seemed like it was the same as here. There, the states could appoint and remove the commissioners. The governor could veto the Port Authority's actions. The facts in HES included that the state's legislature could determine the projects that the Port Authority took, and yet we still said no sovereign immunity. So what do we do with that? So I actually think, I disagree, Justice Jackson, because I think HES is actually a pretty good case for us. I think HES lays out the substantive analysis, and then it applies it to an entity that looks a lot different from New Jersey. Different, not the same. Oh, absolutely. Okay. I think, first of all, most importantly, it's a bi-state entity. And so, oh, right there, you have a diffusion of control, a diffusion of accountability. You have not two, but actually three sovereigns. What does that have to do with whether sovereign immunity should apply? The fact that I would think it should apply even more. You have more sovereigns involved. Well, that argument was made in HES, and I think it had some, it had, you know, I don't mean to disagree with that argument. I think it had some purchase. But it is, this court held, and I, the control features are different, and the political accountability features are different when one side, you know, has a veto over its side stuff, and another side has a veto over its side stuff, and then the federal government is somehow, is in there kind of watching. I mean, that's just a different kind of entity. You can't put it in the bucket of a state agency because it's got three different sovereigns already in the picture. And that's why Lake Country says we're kind of going to presume when we get these odd bi-state entities that they're not all getting the collective, you know, sovereignty. Is that the major difference? You start at a, I think you start at an uphill battle in a bi-state. You can still overcome that, which is why WMATA, I think Judge Bork was right in WMATA, that the D.C. Circuit unanimously found WMATA did overcome that, you know, steeper hill. But we don't start there because this is just New Jersey. It's a New Jersey entity that sits in our executive branch, does rulemaking, has a statewide police department, has a gubernatorial veto, doesn't have any superior property rights to the state. We fund it constantly. We've tied its hands. It can't really ever be profitable the way we've set it up to be. You know, it has all of these hallmarks of state agenciness and no other sovereign in the picture. And then the other thing I'll just say about the Port Authority, that was more regional. That was discussed a bit. It was at one point even in the compact called a, I think a municipal corporation or something to that effect, a municipal subdivision. I mean, it was operating in a smaller area, whereas this is a plenary statewide agency that is providing public transportation for all New Jerseyans around the state. Thank you. Thank you, counsel. Mr. Kimberly? Mr. Chief Justice, and may it please the court. When a state establishes a new public entity, it has a choice. First, it can establish a traditional department, agency, commission, bureau. That is an entity of the government itself that uses state employees and state property to perform its functions and relies on the public fisc for its finances. Alternatively, it can establish a public corporation. A public corporation is a state-created entity that bears two key features. First, it has a separate legal identity. And it's thus capable of suing and being sued in court in its own name, in its own discretion. Second, it holds its own assets and liabilities, meaning that it's responsible for paying debts, including adverse judgments, from its own resources. It is entirely the point of creating a public corporation that it is a distinct legal person, separate and apart from the state that creates it. And the reason is that it makes debt financing substantially easier, because separate legal entities are not bound by the constitutional limitations on public debt. That's so under New Jersey's debt limitation clause. It's true also, we know, from Briscoe and Worcester under the federal bill of credit clause. It's also relatively easier to administer a public corporation's resources, like its human resources, free from the bureaucracy and complications of state government. But by creating a separate legal entity in this way and achieving these benefits, the state accepts a cost. And the cost follows from the creation of a separate legal entity, a separate legal person. And that's that it does not share in the state's sovereign immunity. That has been the consistent holding of this court for the last 200 years, since Planters Bank in 1824, through the Kentucky Bank cases of the 1830s, Lincoln County in 1890, and Hopkins in 1911. Our position is consistent with those cases and with more recent cases like Hess and Lewis. New Jersey Transit's position is not. And I welcome the court's questions. So I take it that you agree with the arguments in the Colt brief? Yes, we are fully aligned. I think the two parties are aligned, yes. What's your response to the reliance on the Nebraska and Missouri case? Mohella? The Biden against Nebraska case? Your Honor, that's a case about standing. And this court's case has recognized that the constitutional status of entities as state actors varies depending on the constitutional context. Lake Country Estate is a good example. That was a case about an interstate entity that had been sued under 1983. The first half of this court's opinion in that case was it is a state actor for 1983 purposes. The second half of the opinion was it is not a state entity for sovereign immunity purposes. Well, isn't it significant that New Jersey does, in fact, cover the liabilities of the Transit Corporation, regardless of whether it's a formal commitment which carries with it consequences that I don't think would be good for either side? But why isn't that what's really significant? They do cover the liabilities. Well, they do. We acknowledge subsidized New Jersey Transit on a forward-looking basis, Your Honor. But if mere subsidies were enough, I don't know how Lewis could have come out the way that it did. That's the case in which the court said that a formal indemnity agreement by which the state agrees to pay for the debt of another doesn't make that other entitled to sovereign immunity. And the inverse with Regents, when the state is indemnified, it is not deprived of state sovereign immunity. So the question of who foots the bill, who ultimately picks up the cost, isn't the relevant question. The question after Regents and Lewis is who bears actual legal responsibility for the judgment? Well, I know that's one of the many factors that come into play, but it does seem to me that the formality of actually being on the legal hook for all the liabilities isn't necessarily as determinative of what they actually do. I mean, the answer that your friend did not give, perhaps out of graciousness, is why aren't you formally liable? Probably is, well, because sometimes courts go off the rails and they don't want to sign a blank check. And I wonder if, in fact, they do cover the liabilities, at least diminishes the significance of the legal formality of signing on the... Well, I don't think that could be the explanation, Your Honor, because if New Jersey actually took the step of making New Jersey transit a part of the government entitled to sovereign immunity, it could cap liability. And suits would have to be brought in New Jersey State Court according to the waiver of sovereign immunity. So if it's concerned about courts going off the rails, it has legislative means of solving that problem. The reason that it doesn't, though, Your Honor, is because New Jersey transit borrows substantial sums of money. I believe it's about $150 million a year. And that money doesn't count towards New Jersey's debt limitation clause, which otherwise would require the issuing of that debt to go to public vote. They don't want to have to deal with that. And the New Jersey Constitution is crystal clear that what it calls autonomous public corporate entities, which are distinguished in the Constitution from the state, are not covered by the debt limitation clause, and that their debts are subject to the same limits only when the state, by formal legislation, agrees by appropriation to pay the principal in debt. In other words, makes itself the real party in interest. And that's not going on here. So to achieve that benefit, Your Honor, to ensure that its finances are not subject to constitutional limitations on public debt, it has to have a separate legal entity. And as we say, and I think as the court's early cases indicate, the consequence is it's not a part of the state and doesn't enjoy sovereign immunity as a consequence. Do you agree with or disagree with the opinion that was cited by your friend on the other side, Judge Bork's opinion in Moore's? No, Your Honor, I take that case to be sort of a product of its time. This was elected. So you disagree with it, it sounds like. In as much as the entity there was a public corporation and was being held to enjoy sovereign immunity, yes. But of course, that's not a case binding on this court. No, I know, but it's been an important opinion in this area. It's obviously relied on the other side. I just want to get your position on it. You disagree with it. That's fine. I think you have to. I was just curious. Yeah, and what I would say, Your Honor, is in the course of this nation's history, never once, of which we're aware, has this court ever held that a public corporation is entitled to the immunity of its state sovereign creator. My friend on the other side offers three cases that he suggests stand for the opposite proposition, but none do. Missouri against Illinois, cited on page five of the reply brief, is a lot like Biden against Nebraska. It's really a standing case. It's also a real party and interest case. I mean, why should that make a difference, whether it's a standing case or an immunity case? The question, do you have standing, was entirely derivative of the question, are you part of the state? And so what the court went about exploring was the question, are you part of the state? Now, there was, to my mind, an easy way to do that, but the court rejected that. You are coming forward with the easy way to do that. You look at a couple of things. You look at the corporate structure. You look at the fact that there's insulation from liability and your inquiry is done. That is not what the court did. The court had a much more multifactored... It did what a lot of the cases do in the sovereign immunity context, which it said, we're going to look at all kinds of supervision and control and really try to figure out whether who's pulling the strings here, what the entity is doing, why they're doing that, and so forth. And your honor, I think the short answer is simply that the bearing of those considerations on whether the state suffers an injury in fact, sufficient to bring a lawsuit, is not the same inquiry as whether the entity is so bound up with the state that to sue it is to sue the state. I don't read Biden against Nebraska as saying a suit against Mohilla would be a suit against Missouri. It's just holding Missouri short. It has an interest in Mohilla's objectives. I think, I don't know. I read it differently. The opinion says Mohilla is a part of Missouri. That's what allowed the standing to proceed. Mohilla is a part of Missouri. Well, I suppose, your honor, then I would suggest that certainly there's nothing about a ruling in our favor in this sovereign immunity context that would require overruling that holding. It would require simply acknowledging that there is a distinction between injury in fact, on the one hand, and the classification of an entity as of the state on the other hand. What's the distinction? Well, the distinction- As relevant to this inquiry that Justice Kagan's raising. Oh, well, I mean, I suppose it's, you know, could the shareholders of a corporation assert injury in fact, based on a regulation that harms the corporation? I think the answer to that in some circumstances is yes. That doesn't mean that the shareholders or corporators that establish the corporation share a single legal identity with it. And indeed, it couldn't because it is again, the whole point of establishing a corporation that you create a new legal person, a new legal person capable of appearing in court in its own name and at its own discretion and with its own assets and liabilities and responsibility for paying debts against it. To deny that that analysis would drive the sovereign immunity inquiry here, the arm of the state inquiry would really be to deny the corporate form at all, that it would be to suggest there's no such thing as a public corporation. Mr. Kimberley, when you said, just out of curiosity, when you said that the WMATA decision was a product of its times, what did you mean by that? There was, following Mount Healthy, there was a push among the lower courts towards a multi-factor test. We see an analytical through line from cases like Planters Bank in 1824 through those cases to today in cases like Lewis. So in short, you're saying it wasn't a sufficiently originalist decision? It certainly was not paying attention to the way that the court thinks about these issues now. Who was the author of that? What was the composition of the panel? I believe it was a Judge Bork opinion for the D.C. Circuit. Joined by Judge Scalia. Right, but Your Honor, these were cases that preceded Hyatt. I'm just answering the question. I'm not trying to argue. Also by Judge Wright, just to be clear. Right, and really the fundamental point is it's a case that precedes Hyatt III, which tells, I think, we take it as an instruction to pay attention to the way that the framers would have understood sovereign immunity to operate. And if you look, I mean, by those rights, Planters Bank of Georgia, written by Chief Justice Marshall, rather clearly, I think, resolves this question. There, Georgia had established the bank as a separate corporation. The state retained substantial control over the corporation. The Chief Justice writing for the court had no trouble saying that it was a separate entity not entitled to share in Georgia's sovereign immunity. Can I just float away to think about this? As I look at our sovereign immunity cases, it really does seem like the fact that there is a corporation at issue here is driving most of the analysis, that it really matters. You know, in terms of the various factors that people have put forward, it seems as though we sort of start with the idea of is there a legally separate entity, i.e. a corporation? And then the cases that are really looking at arm of the state and doing that kind of analysis tend to be ones in which we don't have a corporation and we're still trying to determine to what extent is this entity bound up with the state such that it could be entitled to sovereign immunity. But it's kind of like the corporation cases are, you know, it's enough to say that it's a corporation to get it outside of the realm of sovereign immunity and then we have, well, even if it doesn't get sovereign immunity, should we still not have it be liable in this case because of the real party and interest issue? That's the Clemson scenario. But the sovereign immunity issue, I think this is what I hear you saying, is really about the state's decision to establish a separate entity. And where that has happened, we then don't do what it sounds like your friends on the other side are doing here, which is, well, what does that entity really do as a practical matter? And does it look like it's doing governing things or not? That doesn't matter. It's the sort of initial idea that you've established the separate entities. That's right. And the state is achieving those benefits that I talked about by creating a separate entity. And so it's taking the bitter with the sweet, as Bowdoin Sachs put it in their amicus brief. But when you say a separate entity, what if New Jersey, instead of having a Department of Banking had labeled that the Banking Corporation, but everything else was the same. Would that be what is now the Department of Banking or Department of anything else, Department of Law and Public Safety? Would those be considered to be subordinate corporations at the founding? No, Your Honor, our test is not a label-driven test. It's got to be a bona fide public corporation. And that's why... What does that mean? Well, that's why in our briefing, we focused on two factors in particular. Does the entity have a separate juridical, legal identity, separate personhood so that it can own assets and bear liabilities in its own name without pushing them through to the state? And in addition, is able to sue and be sued in its own name and its own discretion. When it has those two things, it is a corporation. And that's why I think the point about the Louisiana Department being denominated corporations doesn't answer the question. Because employees of those departments are employees of the state. The liabilities of those departments are the liabilities of the state. We wouldn't say that those are bona fide public corporations. If the state were formally liable for the transit authorities' debts or liabilities, this case would be different in your view. I think it would be a lot harder. Frankly, it would look more like Utah construction because Utah construction, the highway commission in that case, did have sue and be sued authority. It was referred to anyway. It's unclear exactly how expensive it was. But the court relied on the fact that it did not have its own assets and would not have been liable to pay an adverse judgment, which would have flowed through to the state. So it was a real party and interest point because the state was deemed a party to the contract. So in some ways, then the case comes down as taking your last answer to whether the state's formally on the hook or practically and in the real world on the hook. Is that not right? Well, I think it is. Because they say, well, we're not formally on the hook, but we're functionally on the hook, which does seem to be accurate as a matter of practice. We can debate that. But your response to that is, well, they have to be formally on the hook, legally on the hook for it to cross the line into a community. Is that accurate? I think it's I feel comfortable saying that is a necessary requirement. And I would say it follows from Lewis. I don't see how one could read Lewis. If we ruled your way, sorry to interrupt, the state's going to want to know how they can do this. And it would be important how we write the opinion. And I just want to get your thoughts on that. You kind of said it would be a harder case. You didn't say it would be a different case. Would it be a different case if they were formally on the hook? No, I'm willing to acknowledge that formal liability is a necessary formal liability of the agency not passing through to the state is is a necessary condition. I would add this is a jurisdictional test. And this court has instructed has has taught that the law should favor clear jurisdictional tests. Mr. Kimberley, your test has the virtue of simplicity and clarity. I grant you that. But you acknowledge this real party and interest exception to it. And I just want to follow up on what Justice Kavanaugh was saying. Is that test solely based on formal liability or other factors? Are they relevant? And if so, do we just create another multifactor balancing test under the real party and interest test? I don't know. And the real party and interest analysis, as it applies to public corporations, is not an exception. It presents a different question. If you however, you want to phrase it, I'm less concerned about whether we phrase it as an exception or it's another test. No, it's something we're going to have to ask in these cases. Right. Even under your approach. And so what I guess I'm asking again is, is it limited to the question of formal liability or other factors relevant? So I think it's a rule 19 necessary party sort of analysis. And the question is, if the government, if the state FISC would be in jeopardy in the case and the state would have to pay, or maybe in an injunction case involving property, real property belonging to the state, I think that real party and interest requirement would be met. But the upshot would not be that the public corporation defendant is thereby rendered an arm of the state. It's just to say that the state also has to be in there. I appreciate that subtlety, but you think that's the only condition in which a real party of interest test could be satisfying what you've outlined here? I think so. Yes, Your Honor. At least as I've described. Slightly different question. I appreciate your point that injury in fact might be different from being able to assert sovereign immunity as a defense. I think Mogil has a footnote on something like this, footnote three. But we do treat our cases in the federal agency context. Sue and be sued is not the end of the story. And you're asking us to do a little something different here than we do there. I think maybe I'm wrong on that. And you can say how it's all perfectly consistent. But I'd like your thoughts. Well, I think the first answer, Your Honor, is the question of federal sovereign immunity is necessarily different and distinct from state sovereign immunity, because in the federal sovereign immunity context, the Congress sits in the same seat as the state legislature with respect to the immunity that state entities get in state court. Federal Congress has plenary authority over the jurisdiction of the courts and plenary. Well, with exceptions for this court has near limitless and certainly among the lower courts jurisdiction to determine who can be sued under what circumstances, when subject to what limits and so forth. And so the question there is necessarily differs in the same way that New Jersey has say so power over immunity in its courts. The federal Congress has say so power over immunity in federal courts. What would happen, Mr. Kimberly, if New Jersey and creating this corporation had said we wish to bestow upon it our own sovereign immunity? I think that would have implications, as I was saying, on a say so basis for New Jersey state court. It would not drive the analysis for this federal law question. And why is that? I mean, if I guess this gets to the question that the briefs debate back and forth as to what the role of intent is in this. So I'm taking that kind of provision to be a definitive statement of New Jersey's intent as to what it thinks this agency is and how it wants it to be treated. Well, so I think Regents footnote five is a good directive on this point. Obviously, that was an 11th Amendment immunity case. But I think everything that Hyatt three says about this doctrine is consistent with it, which is to say it is a federal law question and state law. It's a federal law question. That doesn't necessarily mean that New Jersey's intent doesn't play a powerful role in the inquiry. Well, I think what it instructs is that it matters what New Jersey achieves. So the characteristics, the substantive characteristics of the entity as determined by the state, the state can choose whatever characteristics it likes are what drive the analysis. It isn't sort of legislative decree that drives it, nor could it be, because that would effectively convert the federal law inquiry into a state law determination. You know, and I would say states do exercise this sort of power over the ability to determine the characteristics of an entity all the time. I point the court as an example to the difference among various public universities. In a case called Kovats, the Third Circuit determined that Rutgers is not entitled to sovereign immunity, and it did so by pointing to all the things that we're pointing to here. Its finances and property are separate from the state. It has independent sue-and-be-sue power, and the state would not have to pay judgments against Rutgers University. But in McAdoo against UNC, the Fourth Circuit came to the opposite conclusion with respect to UNC. It held that UNC is an arm of the state, and it did it for all the reasons that we've been talking about. Its finances really are mixed with the public treasury.  are state employees. Its property is property of North Carolina. It is not its own, and I'll come back to that in a minute because New Jersey Transit does have separate property. And it can't participate in judicial proceedings without the say-so of the Attorney General of the state. That in all ways describes an arm of the state, something closer to an agency or a department division. It's entirely different from Rutgers. A state that wants to extend sovereign immunity to a state university knows how to do it. And those that want to segregate the state university from the state for purposes, for example, of debt fundraising, know how to do it. I would add that it came up a couple of times in Mr. Zuckerman's presentation that the property of New Jersey Transit is not its own. But that is not what New Jersey state law says at all. I'd point the court to its organic statute. This is 2725-5, paragraph J and K. And it says that New Jersey Transit may purchase, lease as lessee, or otherwise acquire, own, hold, improve, and use real and personal property in its own discretion on terms that it determines. Paragraph K says that it can in turn dispose of real and personal property. For their contrary position, my friends on the other side rely on a tax provision that says, this is 2725-16, any property owned by the corporation, property owned by the corporation, shall be considered state property for real estate tax purposes. But tax law and tax doctrine deems things to be contrary to what they are all the time for tax treatment purposes. That doesn't mean that New Jersey holds title to this property. New Jersey Transit is established as a separate corporation. It has its own assets. It has its own liabilities. Those liabilities have to be paid out of New Jersey Transit's own assets. That makes it a separate entity. That is the point of establishing it as a public corporation. I would add, Your Honors, that Justice Jackson, as you noted, the Department of Transportation is empowered to enter into contracts with New Jersey Transit. If New Jersey Transit were a division within the Department of Transportation, it wouldn't be entering into contracts with it because it would be of the Department of Transportation, which cannot enter into contracts of its own. And there is no question, according to New Jersey State law, that entities needing New Jersey Transit's description are in, but not of, the government and the department in which they are located. This is the Parsons decision cited in the Bowdoin-Sachs brief, decided two years after the adoption of the 1947 New Jersey Supreme Court, New Jersey Constitution, holding there that the Turnpike Authority, which is constituted as a public corporation using terms virtually identical to New Jersey Transit's, is in, but not of, the state highway department. And that fact does not make it any less an independent entity. Can I ask you a question just about the blast radius of your position, if it were accepted? Because the reply brief of the state says for things like the Illinois Housing Development Authority, the Minnesota Housing Finance Authority, Texas Department of Housing and Community Affairs are all, and other state agencies like that would all be affected and they use the word, I'm not saying I agree with this, I just want to give you a chance to response that this will create chaos in those states. So can you just respond to that so that we have that on the table? Sure. I think it's really hard to understand how it would create chaos. As an initial matter, the immunity that those entities get in the courts of their own state is determined by state law. That's not on the table here. The immunity that those entities get in federal court is largely already driven by ex parte young with respect to injunctions. You're not going to see a substantial change there. And with respect to anything like a constitutional tort would be driven by section five abrogation under 1983 or something of the like. The only cases in which this issue comes up is when those entities are reaching out extraterritorially and committing state law torts against non-citizens outside of the state. The range of circumstances in which that comes up are few and far between. And I would note indeed that those entities didn't, as your honor noted, that those entities didn't get immunity between 1979 and 2019 as it was. So, you know, the sky didn't fall then. There's no reason to think that the sky would fall now. And I would add really the benefit of ruling in our favor on the grounds that we put forward is state lawmakers would have a clear constitutional rule. They would understand when by using the public corporate form in the bona fide sense when their entities would be entitled to such immunity and when they wouldn't. Under New Jersey Transit's test, it's sort of a mishmash. You know it when you see it. Maybe this is enough control. Maybe it isn't. Maybe this degree of subsidy is enough. Maybe it isn't. That kind of rule for what is ultimately a question of subject matter jurisdiction really is wholly unworkable and is far, I think, more troubling than anything that a ruling in our favor would implicate. When you say it's unworkable, what's one of your examples? Well, I think this case. In this case, what you know, when you say something's unworkable, there's probably lots of confusion out there. Can you cite what you think is confusing? Yeah, I mean, Your Honor, the role, for example, that so look just at the two decisions in this case. The New York. Apart from this case. Well, OK, my apologies. I think they're reflective of the other cases that we cited in the cert petition where courts, a number of courts place primacy on what sort of the state say. So what the state believes its entities entitled to others place primacy on what's called the treasury factor. Other courts will consider things like the degree of control. Others will downplay that. Frankly, I think is as Hested. When you've got a multifactor test like this, where there are no clear lines, it ends up that substantial amounts of resources are spent just litigating whether we can litigate rather than litigating the merits. You know, I would add my friend on the other. Well, I'll I'll in there unless they're. We'll find out. This is Thomas. This is legal. This Jackson. Your chance to add if you would like to. Well, I was. I was going to add that New Jersey, New Jersey Transit asserted in its presentation that its courts are open to resolve suits like this. It's not at all clear that they have conceded that in their brief. New Jersey Court Rule four colon to that three dash two states that suit can only be brought where the injury occurs. But if the injury occurs out of state, there's no forum in state where a case like this could be brought. So the upshot is New Jersey Transit just gets away with it. Thank you. Thank you, counsel. Rebuttal, Mr. Zuckerman. Let me just start there and be very clear. We did concede that it's footnote two of our cert reply in the cold case. We do. The New Jersey courts are open to claims for events that occur outside of states. A venue rule that my friend, Mr. Kimberly is talking about. It's not a basis for a motion to dismiss. You can't get a case. Because of it. So so the courts are open. But let me go back to the substance here, which is why I don't think I heard anything from Mr. Kimberly's presentation that makes me think his rule is actually clear at all. So I didn't hear answers to how what the blast radius is as to standing and mohila. I didn't hear how this is going to work for any of the federal entities like Amtrak or TVA or FDIC. I didn't hear an answer that works for the Pennhurst injunctions problem at all. I heard Mr. Kimberly say, don't worry. Ex parte Young will take care of it. But what Mr. Kimberly is missing is that state law injunctions are now available in federal courts inside those states as all of these entities. So the Florida Department of Transportation to Justice Jackson's question, which does, I think, has all the incidents of corporate form because because states often want their entities to be able to engage in MOUs or contracts with other, you know, with other agencies so that they can carry out their work subject to the state's plenary control would now be subject to an injunction in federal court under a state law claim in Florida because it is in their telling just not the state. It's a corporation. Same with the Louisiana Department of Corrections. You could just get a state law injunction contra Pennhurst to try to close a prison in Louisiana because in their telling, it's not the state. And I think to try to avoid those those untenable results, I heard Mr. Kimberly say, well, maybe we're going to pivot to a bona fide corporations test. Maybe we're going to bring in real party and interest law or rule 19 law. I think that either just replicates what we're saying has been the rule all along, which is you do a functionalist analysis. You look at the at this thing as a whole and figure out what it really is or not, which means you look behind the formality of using the word corporate, which we agree with. We did use the word corporate. And yet under state law, it's quite clear we didn't mean a truly separate thing. We meant a state agency that could do all of these things and be a little more efficient in the ways we would have written it a different way. Had we anticipated this precise argument in in 1979, which which gets back to just the immense, to use Justice Kavanaugh's phrase, blast radius for states who have not known that they were legislating against this new backdrop for the last 50 or even 200 years. Now they're all going to have to figure out how this is supposed to work. And I think it's far, far simpler and not at all unworkable. I haven't heard any serious argument. It is unworkable to do what this court has always done, which say, look, there are three buckets and I didn't hear Mr. Kimberly say which other bucket he thinks New Jersey Transit could possibly fall into. Is it a state agency? Does it? Is it a municipality or is it a private company? And New Jersey Transit doesn't look anything like a municipality, and it sure doesn't look anything like a private company because no private company could ever have or be subject to the kinds of responsibilities that New Jersey Transit has. Thank you, counsel. The case is submitted.